UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| | : | 18 Cr. 768 (RMB) |
| - against - | : | |
| | : | **DECISION & ORDER** |
| DARNEL HOOKER, | : | |
| | : | |
| Defendant. | : | |

------------------------------------------------------------x

Having reviewed the record herein, including without limitation: **(1)** Defendant Darnel Hooker's motion, dated August 3, 2020, requesting that "the Court grant [him] compassionate release, resentence him to time served pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), and convert the unserved portion of his custodial sentence to home confinement and supervised release." See Def. Mot. at 3. Hooker contends that: (i) his underlying health issues "place him at high risk . . . should he contract COVID-19 while incarcerated"; (ii) the "specific conditions of [] [his] confinement increase the risk that he will contract COVID-19"; (iii) he has demonstrated "excellent rehabilitative efforts" while incarcerated; and (iv) the 18 U.S.C. § 3553(a) factors "support a reduction in sentence." Id. at 10-15; **(2)** the Government's response, dated August 17, 2020, opposing Hooker's release and contending: (i) the underlying health issues identified by Hooker "do not constitute extraordinary and compelling reasons for release"; (ii) Hooker "is a danger to the community"; and (iii) the § 3553(a) factors "weigh against shortening [Hooker's] federal sentence." See Gov't Opp. at 4-6; and **(3)** Hooker's reply, dated August 24, 2020. Hooker also requests that his BOP medical records, filed as Exhibit C to his motion ("Exhibit C"), be filed under seal. Def. Mot. at 9, **the Court hereby accepts Hooker's medical records under seal but denies his motion for compassionate release, as follows:**[1]

---

[1] **Any issues or arguments raised by the parties but not specifically addressed in this Decision and Order have been considered by the Court and rejected.**

1

## I. Background

On July 2, 2019, Hooker, who is 34 years of age, pleaded guilty to participating in a conspiracy to be a felon in possession of ammunition, in violation of Title 18, United States Code, Section 371. See July 2, 2019 Plea Hr'g. Tr. at 21:20-22:7. On November 4, 2019, the Court sentenced Hooker to 58 months' imprisonment to be followed by 3 years of supervised release. See Nov. 4, 2019 Judgment. At the time that Hooker filed this motion, he had been incarcerated at the Metropolitan Correctional Facility ("MCC"). See Gov't Opp. at 2. Since filing his motion, he has been transferred to USP Canaan, a high-security penitentiary in Pennsylvania. Id.; see also USP Canaan, BOP, https://www.bop.gov/locations/institutions/caa/. Hooker has served less than half of his sentence, i.e., approximately 25 months of his 58-month sentence. See Gov't Opp. at 2. He is not scheduled for release until January 4, 2023. Id. On March 27, 2020, Hooker, while still incarcerated at MCC, submitted a letter to the Warden of MCC "request[ing] that the Bureau of Prisons grant [him] compassionate release." See Def. Mot. Ex. A at 1. He states that more than thirty days have elapsed since he submitted his request. See Def. Mot. at 4; see also Gov't Opp. at 3.

## II. Legal Standard

18 U.S.C. § 3582(c)(1)(A) provides in part:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . .

United States Sentencing Commission policy statement U.S.S.G. § 1B1.13 provides that a court may reduce a term of imprisonment if "extraordinary and compelling reasons warrant the reduction," "the defendant is not a danger to the safety of any other person or to the community . . .," and "the reduction is consistent with this policy statement." Application Note 1 states in part that extraordinary and compelling reasons may exist if: **(1)** "[t]he defendant is . . . suffering from a serious physical or medical condition . . .

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; or **(2)** "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."

III. **Findings**

The Court's findings are as follows:

1. Over thirty days have lapsed since Hooker, who as noted is 34, submitted his application for compassionate release to the BOP. See Def. Mot. Ex. A; Opp. at 3. Accordingly, the Court may consider Hooker's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). *See United States v. Burman*, 2020 WL 3182766, at *2 (S.D.N.Y. June 13, 2020) ("Because more than thirty days have passed since [defendant] petitioned BOP for compassionate release, he is deemed by statute to have exhausted his administrative remedies.").

2. Hooker "has a medical history that includes . . . surgery[] [for] a gunshot wound that collapsed his lung" twice. See Nov. 4, 2019 Sentencing Tr. at 4:2-4:4; see also Def. Mot. Ex. C at 55. According to Hooker, his "lung injur[y] [from the gunshot wound] significantly impact[s] his respiratory system," namely "[t]he injury causes him shortness of breath and chest pains." See Def. Mot. at 2, 10, 14.

3. While not noted in Hooker's motion or the Government's response in this case, at least one other court has determined that "as a general matter, USP Canaan has responded to and defended against the threats of the virus in a vigorous and generally effective manner." *United States v. Cummings*, 2020 WL 4607253, at *2 (M.D. Pa. Aug. 11, 2020) (internal quotation marks and alterations omitted); *see also United States v. Gitto*, 2020 WL 4350090, at *3 (E.D.N.Y. July 29, 2020) (noting "the low number of cases, both active and recovered, reported by USP Canaan"). As of November 4, 2020, it appears that there were 5 active COVID-19 cases among the 1,105 inmates at USP Canaan. See COVID-19 Cases, BOP, https://www.bop.gov/coronavirus/ (last visited Nov. 4, 2020).

4. As noted, Hooker states that he "experience[s] shortness of breath and chest pains" stemming from his "twice ruptured lung," which he argues "impacts his susceptibility to the effects of COVID-19." See Def. Mot. at 9-11. According to Hooker's medical records: (1) on April 16, 2020, he informed BOP medical personnel that he had been experiencing "shortness of breath for 3 weeks." See Def. Mot. Ex. C at 55, and; (2) on June 9, 2020, he complained that he "had chest pain." Id. at 1. With the exception of one medical visit in December 2019 for a cold, Hooker's "BOP medical records [] do not show any [other] complaints of chest pain or respiratory difficulties." See Gov't Opp. at 5.

5. Shortness of breath and chest pains are not conditions listed by the CDC "as exacerbating COVID-19 infection." *Saxon v. United States*, 2020 WL 4548078, at *3 (S.D.N.Y. Aug. 5, 2020) (internal quotation marks omitted); see *United States v. Edwards*, 2020 WL 5518322, at *3 (D.D.C. Sept. 12, 2020) (a similar case to this one, where "[defendant's] lungs collaps[ed] two times[,] [but] the only current side effect of those previous injuries appear[ed] to be self-reported breathing difficulties[.] [S]uch injuries . . . do not suffice as compelling and extraordinary reasons for a sentence reduction absent some other aggravating factor."); *United States v. Felix*, 2020 WL 4344843, at *4-5 (W.D.N.Y. July 29, 2020) ("[Defendant] claims to have underlying medical conditions that make him highly susceptible to COVID-19, consisting of . . . difficulty breathing [and] chest pain . . . . Because [defendant] does not suffer from any of the medical conditions listed [by the CDC], he is not at high risk of severe illness from COVID-19."). Without any evidence showing that Hooker suffers from a chronic lung condition, the Court cannot find that he is at increased risk for serious illness if infected with COVID-19. *United States v. Cato*, 2020 WL 5709177, at *5 (E.D.N.Y. Sept. 24, 2020).

6. Hooker also argues that the "terrifying" conditions of confinement at MCC warrant a reduced sentence. See Def. Mot. at 7, 14. But as noted, Hooker is no longer at MCC; he has been transferred to USP Canaan. See Gov't Opp. at 2. Now that Hooker has been transferred, his reliance on the conditions at MCC is moot. *See United States v. Russ*, 2020 WL 6083309, at *2 (M.D. Tenn. Oct. 15, 2020); see also *United States v. Freedland*, 2020 WL 4926542, at *6 (E.D. Pa. Aug. 21, 2020) ("[Defendant's] motion focused on [the conditions] at the Federal Transfer Center in Oklahoma City.

4

Because [defendant's] transfer has since been completed and he is no longer housed at the Federal Transfer Center, those arguments are now moot.").

7. Hooker also contends that his "excellent rehabilitative efforts" support early release. Def. Mot. at 2. Hooker states that he "has had a near-perfect disciplinary record," has "worked and participated in programs offered by the Bureau of Prisons," has had "superiors who refer to him as 'a model inmate,'" and "has completed several education and vocational programs." Id. at 3, 14. The Court commends Hooker's institutional record and his efforts at rehabilitation. "However, this factor alone cannot constitute an extraordinary and compelling reason warranting release." *United States v. Saleh*, 2020 WL 3839626, at *4 (S.D.N.Y. July 8, 2020) (internal citations and quotation marks omitted); *see also United States v. Williams*, 2020 WL 5253205, at *5, 6 (S.D.N.Y. Sept. 3, 2020) (where defendant had participated in educational and vocational programs, and BOP personnel had acknowledged "[defendant's] personal traits, commitment, and skills," compassionate release was denied because the court cannot reduce a sentence based on rehabilitation alone).

**Danger to the Community**

8. Even if Hooker had established one or more "extraordinary and compelling" circumstances, the Court would be constrained to deny his motion because, it concludes, he poses a danger to the community. See § 3582(c)(1)(A)(i); U.S.S.G. § 1B1.13. A finding of danger to the community outweighs arguments favoring early release. *See United States v. Gil*, 2020 WL 2611872, at *2 (S.D.N.Y. May 22, 2020) ("[T]he Court finds that releasing Defendant would be contrary to the Sentencing Commission's directive that courts should deny compassionate release to defendants who pose a danger to the community."); *see also United States v. Tisdale*, 2020 WL 5441584, at *3 (S.D.N.Y. Sept. 9, 2020) ("[T]he relevant § 3553(a) factors outweigh any extraordinary and compelling reasons warranting compassionate release, and an early release would undermine the goals of [defendant's] sentence.") (internal quotation marks and alterations omitted).

9. "Dangerousness" in this case is based upon the following: **(1)** Hooker's indictment reflects "a very serious" crime, in which Hooker, "after participating in a physical fight with [two people] in a nearby liquor store[,] . . . stalked the victim[s] to Sedgwick Houses where he fired [a gun] at them multiple times, hitting one victim [] in the abdomen and arm, and the other victim [] in the leg." See Gov't Sentencing Submission at 1. Moreover, this crime that Hooker committed was committed while he was on parole. Id.; Nov. 4, 2019 Sentencing Tr. at 14:24-14:25; *United States v. Johnson*, 2020 WL 5369200, at *6 (D. Conn. Sept. 8, 2020) ("that [defendant] committed the instant crime while on supervised release for an earlier conviction militates strongly against returning him to the community"); and **(2)** Hooker's criminal history category of V reflects an extensive criminal record, consisting of nine prior convictions: seventh-degree possession of a controlled substance (for which he was convicted twice); fourth-degree attempted criminal possession of a narcotic drug; resisting arrest; reckless driving; fifth-degree criminal possession of marijuana; third-degree criminal possession of a controlled substance; first-degree attempted assault; and third-degree aggravated unlicensed operation of a motor vehicle. See Nov. 4, 2019 Sentencing Tr. at 4:15-4:24, 14:2-14:3; Gov't Opp. at 2, 4.

10. The Court finds that Hooker presents a danger to the safety of other persons or to the community. "The underlying conduct that led to [Hooker's] sentence in this case gravely endangered the safety of the community." *United States v. Lovick*, 2020 WL 5237349, at *2 (S.D.N.Y. Sept. 2, 2020) (internal citation and quotation marks omitted); *United States v. Wicker*, 2020 WL 2124522, at *1-2 (D. Conn. May 5, 2020) (defendant has failed to show "that he is not a danger to the community. His record reflects a very long pattern of crime, . . . . including convictions for third-degree assault, possession of narcotics, . . . interfering/resisting arrest, [and] . . . use of a motor vehicle without a permit"); *United States v. Ortega*, 2020 WL 3402914, at *3 (S.D.N.Y. June 19, 2020) ("[Defendant's] lengthy prior criminal history . . . . indicates a significant risk to the public especially during the current pandemic, when the ability to effectively supervise [defendant] is greatly compromised and public law enforcement resources are strained.").

**18 U.S.C. § 3553(a) Factors**

11. The sentence reduction sought by Hooker would fail to satisfy the purposes of sentencing, which are "to reflect the seriousness of the offense, to promote respect for the law, [] to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, [and] to protect the public from further crimes of the defendant." *United States v. Garcia*, --- F. Supp. 3d ----, 2020 WL 2468091, at *6 (S.D.N.Y. May 13, 2020); Nov. 4, 2019 Sentencing Tr. at 17:16-17:24; *see also United States v. Harris*, 2020 WL 5801051, at *4 (S.D.N.Y. Sept. 29, 2020) ("The Court cannot find that a sentence less than half the length imposed, which [defendant] now seeks, is compatible with the important interests undergirding § 3553(a). . . . To release [defendant] this early in his term of imprisonment would disserve the interests embodied in the Court's original sentencing determination—most significantly, the need for the sentence imposed to reflect the need for just punishment."); *United States v. Myrick*, 2020 WL 6128943, at *5 (E.D.N.Y. Oct. 19, 2020) ("[Defendant] has served less than half his sentence. If [the Court] were to release him now, his sentence would fail to reflect the seriousness of the offense, promote respect for the law, or provide just punishment for the offense.") (internal quotation marks and alterations omitted); *see also United States v. Allen*, 819 F. App'x 418, 419 (6th Cir. Aug. 27, 2020) ("In a compassionate release proceeding, as at sentencing, the district court is best situated to balance the § 3553(a) factors.") (internal quotation marks omitted).

IV. **Conclusion & Order**

Defendant's motion for compassionate release is respectfully denied. His request to file Exhibit C under seal is granted. *United States v. Daugerdas*, 2020 WL 2097653, at *3 n.2 (S.D.N.Y. May 1, 2020).

Dated: New York, New York
November 5, 2020

*Richard M. Berman*
**RICHARD M. BERMAN, U.S.D.J.**